IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT BUENTELLO,<br>TDCJ #1161835, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-2537 |
| | § | |
| STATE CLASSIFICATION | § | |
| COMMITTEE MEMBERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Robert Buentello (TDCJ #1161835) has filed a *pro se* complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement at the Ferguson Unit of the Texas Department of Criminal Justice (collectively "TDCJ") where he presently resides. Doc. # 1. Buentello complains that he was denied adequate medical care by Dr. Betty Williams.[1]

Dr. Williams has filed a motion for summary judgment supported by Buentello's medical records and an affidavit from Steven Bowers, MD. Docs. #27, #27-1, and #27-2. Buentello has responded to the defendant's motion. Doc. # 32. After reviewing all of the pleadings and the applicable law, the Court concludes that

---

[1]  Buentello also alleged that TDCJ correctional officials and State Classification members denied him protection from assault by other prison inmates at Ferguson. The Court dismissed these claims in a separate Memorandum and Order [Doc. #31].

defendants' motions should be **granted** and the complaint must be **dismissed** for the reasons set forth below.

## I.    FACTUAL BACKGROUND

### A.    Buentello's Allegations

Buentello complains that Dr. Williams has denied him adequate medical care for his back problems, stomach problems, and Hepatitis C. He states that he was injured while he was in the Navy in 1992 and that he suffered head trauma in 1993. Doc. # 9, p. 3. He alleges that he injured his back while working on a hoe squad at the TDCJ Wallace Unit in 2004 and that his knees began bothering him in 2007. Buentello also states that he was diagnosed with Hepatitis C in 2005. *Id.* Consequently, medical restrictions were placed on his work assignments. Buentello claims that Dr. Williams removed his medical restrictions which allowed the Classification Committee to assign him to work detail which injures his back and knees. *Id.* at 5-8. He also alleges that he has been denied healthy food trays and has not been referred to a neurologist. *Id.* Buentello also alleges that he has been denied medication for his Hepatitis C and that he has not been prescribed physical therapy for his back and knees. *Id.*

Buentello seeks an injunction granting him proper medical care. Doc. #1, p.4.

### B.    Defendant's Response

Dr. Williams has filed a motion for summary judgment under Fed. R. Civ. P. 56(c) disputing Buentello's claims of deliberate indifference. In addition, she argues that she has no authority to transfer Buentello to another unit. She also argues that she is entitled to Eleventh Amendment immunity regarding suits brought against her in her official capacity.

Dr. Williams contends that the records show that Buentello received attentive medical care from her and other UTMB medical providers. *See* Medical Records, Exhibits A and B [Doc. # 27-1, # 27-2]. The records indicate that Buentello was seen, monitored, and treated by medical providers regarding his back and knees numerous times from January 1, 2011, through March, 2013. *See* Doc. # 27-1, pp. 27, 29, 36, 62, 64, 73, 74. The medical providers, including Dr. Williams, prescribed medication for Buentello's arthritis during that period. *Id.*; Doc. # 27-2, p. 4. The records also show that Buentello was referred to a speciality clinic for Hepatitis C evaluation. Doc. # 27-1, pp. 44-56; Doc. # 27-2, p. 4. Dr. Williams cannot order treatment for Hepatitis C; she can only refer a patient to the Hepatitis Clinic for evaluation and treatment. Doc. # 27-2, p. 4.

Dr. Williams saw Buentello only one time, August 3, 2011, in part because she was scheduled to visit the Ferguson Unit only once every other week. Doc. # 27-1, p. 27; Doc. # 27-2, p. 3. Buentello had submitted a sick call request on July 20, 2011,

-3-

but stated that he did not want to see the Nurse Practitioner. Doc. # 27-2, p. 3.   When Dr. Williams saw Buentello on August 3, he informed her that he wanted to be prescribed a "Diet for Health" because the peanut butter he had been served was causing him indigestion. Doc. # 27-1, p. 27.   Dr. Williams noted that Buentello was not suffering from high blood pressure, high cholesterol or diabetes and informed him that there was no reason to place him on "Diet for Health."   Doc. # 27-1, p. 27; Doc. # 27-2, p. 3.   It was also noted that Buentello was five foot, six inches tall, and weighed 150 pounds and therefore his size and weight do not meet the criteria for morbid obesity and Buentello did not qualify for "Diet for Health."   Doc. # 27-2, p. 3, 6.   Buentello had been previously given a pork-free diet option because he stated that he was Jewish.   Doc. # 27-1, p. 30.

In addition to finding that Buentello did not need a special diet, Dr. Williams also reviewed his notes and determined that many of his medical restrictions were not necessary.   Doc. # 27-2, p. 3.   It was noted that Buentello had refused his referral for evaluation for physical therapy on December 21, 2010.   *Id.*   His x-rays showed only minimal degenerative changes indicating mild arthritis in his knees.   Doc. # 27-2, p. 3.   The attending physician's assistant at that time did prescribe Buentello 800mg of Motrin twice daily for pain management.   *Id.*   However, there were no sick call requests complaints indicating headache, loss of vision, dizziness, memory loss or loss

-4-

of balance from January 1, 2011, through August 3, 2011.  *Id.* at 4.  Consequently, Dr. Williams removed Buentello's "low bunk" and "low row" housing restrictions after concluding that he was only suffering from mild arthritis and did not have a debilitating condition which would prevent him from climbing the stairs or using an upper bunk. *Id.*; Doc. # 27-1, p. 27.  She also found that Buentello's condition indicated that medical work restrictions were not necessary.  *Id.*  Dr. Williams did prescribe Buentello Ibuprofen, 600mg twice daily, for treatment of his arthritis.  *Id.* Williams contends that her judgment and her actions were objectively reasonable at the time and that she is entitled to qualified immunity.

## II.   <u>STANDARD OF REVIEW</u>

### <u>Motion for Summary Judgment</u>

A movant is entitled to summary judgment if he shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  In considering such a motion, this court construes "all facts and inferences in the light most favorable to the nonmoving party."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotations marks omitted).  For summary judgment, the movant has the burden of showing that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 325. In doing so, the movant must establish the "absence of evidence to support an essential element of the non-movant's case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal citations omitted). The motion for summary judgment must be denied if the movant fails to meet this initial burden. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). However, if the movant does succeed in meeting this burden, the non-movant must go beyond the pleadings and identify specific facts showing that there is a genuine issue of a material fact warranting trial. *Id.*

To prove there is an absence of evidence in support of the non-movant's claim, the movant must identify areas that are essential to the claim in which there is an "absence of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). However, the movant "need not negate the elements of the non-movant's case." *Boudreaux v. Swift Transp. Co. Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

Mere conclusions and allegations are not summary judgment evidence and cannot be used to defeat or support a motion for summary judgment. *Topalian v. Ehrman*¸ 954 F.2d 1125, 1131 (5th Cir. 1992). To successfully oppose a motion for summary judgment, the non-movant must present specific facts showing "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc.*, *v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).

If the non-movant fails to point out evidence opposing summary judgment, it is not the court's duty to search the record for such evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III.   DISCUSSION

Buentello's complaint is governed by 42 U.S.C. § 1983, which provides a remedy for violations of civil rights by state actors:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Thus, to state a claim under 42 U.S.C. § 1983, a plaintiff must show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. *See Atteberry v. Nacona General Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995)).

Buentello complains that Dr. Williams failed to provide him with adequate

medical care.  Dr. Williams contends that the medical records attached to her motion for summary judgment demonstrate that she has not been deliberately indifferent to his serious medical needs and that he has been provided adequate care.

Because he is a prisoner of the TDCJ and must rely on TDCJ officials for all of his needs, Buentello has a right to basic medical treatment .  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  This right is violated if custodial officials or health care workers are deliberately indifferent to his serious medical needs.  *Id.*; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  Unsuccessful treatment or treatment that is inconsistent with an inmate's preferences is not a constitutional violation.  *Id.*  Negligence is not a violation either.  *Id.*

Deliberate indifference must be proven, and an official is deliberately indifferent to an inmate's needs only when she knows of a serious threat to an inmate's health and knowingly ignores it.   *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  To prove deliberate indifference, Buentello must show that Dr. Williams "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)).

-8-

Williams asserts that she is entitled to qualified immunity which shields her from liability for discretionary acts performed within the scope of her authority. *See Harlow v. Fitzgerald*, 457 U.S. at 815-19. However, Buentello seeks only injunctive relief. *See* Doc. #1, p.4; Doc. #27, p. 4. Qualified immunity only applies to claims for damages; it does not protect officials from injunctive relief. *See Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006) (citing *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995)). Therefore, the Court will not consider whether Williams is entitled to qualified immunity. *Morgan v. Swanson*, 659 F.3d 359, 365 n.3 (5th Cir. 2011) (*citing Williams*). Instead, the Court will determine whether there has been a showing of deliberate indifference.

"To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prison official shows deliberate indifference, for purposes of an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical needs, if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

-9-

he must also draw the inference. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

"Deliberate indifference is an 'extremely high' standard to meet." *Id.* (citing *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006)).   Therefore, the Court reviews the evidence with the understanding that Dr. Williams can only be found to have been deliberately indifferent to Buentello's serious medical needs if she knowingly disregarded an obvious risk to his health. *Id.* n. 4 (citing *Bias v. Woods*, 288 F. App'x 158, 162-163 (5th Cir. 2008).

**Buentello's Back and Knees.–** Buentello received focused and attentive medical care for his back and knees.  The records show that Buentello was prescribed medications for his back pain and was seen by medical providers, including Dr. Williams, in response to complaints about his back on multiple occasions over a fifteen month period.  Doc. # 27-1, pp. 27, 29, 36, 62, 64, 73, and 74; Doc. # 27-2, p. 4.  Buentello was also scheduled for therapy but refused to go.  Doc. # 27-1, p. 65; Doc. # 27-2, p. 3.  A radiology report, dated April 7, 2011, indicated that Buentello's cervical spine had a slight inward curve and that he had mild degenerative arthritis of the C5-C6 and C6-C7 discs.  Doc. # 27-2, p. 3.  There is also a radiologist's report regarding Buentello's knees noting "minimal degenerative change" with "no acute bony changes observed."  Doc. # 27-1, p. 36.  These diagnoses, which do not signify obvious and dire conditions, do not support a finding that anyone exhibited deliberate

indifference to Buentello's serious medical needs regarding his back and knees.  *See Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539-540 (6th Cir. 2008); *see also Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) ("Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred."); *Veloz v. New York*, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y. 2004) (plaintiff's chronic back pain and mild to moderate degenerative arthritis of spinal vertebrae did not establish a serious medical need).

The records refute Buentello's claim that Williams or any health care provider was deliberately indifferent to his complaints about his back and knee condition. *Gobert*, 463 F.3d at 346 -347; *see also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993).  On the contrary, they show that reasonable measures were taken to diagnose and treat the ailments found.  *Id.*  Any lapses in treatment were minimal and do not amount to deliberate indifference.  *Stockwell v. Kanan*, 442 F. App'x 911, 914 (5th Cir. 2011) (citing *Mayweather,* 958 F.2d at 91).  Buentello's disagreement with the opinion of Dr. Williams, or other health care workers, regarding his condition or necessary treatment is not a basis for a finding of deliberate indifference.  *Sama v. Hannigan*, 669 F.3d 585, 590-591 (5th Cir. 2012); *see also Cuellar v. Livingston*, 321 F. App'x 373, 374-375 (5th Cir. 2009) (citing *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.

1991).

**Hepatitis C.**–   Williams was only authorized to refer Buentello for Hepatitis C evaluation at the HCV clinic and could not order treatment.  Doc. # 27-2, p. 4. Williams has shown that Buentello was referred  for Hepatitis C evaluation which is the full extent of her ability to respond to his need for help with this malady.  *Id*.; Doc. # 27-1, pp. 44-56.  A  liver  biopsy  was  performed and revealed that Buentello's condition as being at Grade 1 (minimal inflamation without necrosis) and with no fibrosis.  Doc. # 27-1, pp. 51, 53.  Buentello's records show that his Hepatitis C has been regularly monitored; however, he has not shown any symptoms of the disease. *Id*. at 57.  The records refute Buentello's allegations of deliberate indifference to his Hepatitis C condition.  *Gobert*, 463 F.3d at 346 -347; *Banuelos*, 41 F.3d at 235.  There is also no showing that Dr. Williams could have been personally involved in any denial of care.  Williams's referral of Buentello to specialists in diagnosing and treatment of his Hepatitis C condition is sufficient to demonstrate she was not deliberately indifferent to his health needs.  *Hasty v. Johnson*, 103 F. App'x  816, 819 (5th Cir.  2004).

**Diet  Restrictions.**– Williams has  shown  that  Buentello did not suffer any problems such as weight control, blood pressure, high cholesterol, diabetes or other conditions which would have necessitated a prescribed diet to control.  *See* Doc. # 27-

2, p. 3, 6.   Buentello was provided with a pork free diet because he declared that he is Jewish.   Doc. # 27-1, p. 30.   Prison inmates have a right under the Eighth Amendment to be provided with meals that meet their nutritional needs.   *Palmer v. Johnson,* 193 F.3d 346 (5th Cir. 1999); *Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999).   But prisoners cannot dictate what they are fed.   *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007).   There is no evidence in the record that demonstrates that Buentello suffered any harm, such as weight loss or serious gastric distress, from the food that he has been provided.   His disagreement with Williams about his diet is not actionable.   *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir. 2001); *Varnado*, 920 F.2d at 321.

**Medical restrictions.**– Buentello claims that Dr. Williams removed his medical restrictions which allowed the Classification Committee to assign him to work detail which injures his back and knees.   He also complains about losing his bottom bunk restriction.   Buentello's records reveal that he had been medically unassigned for sixty days on May 5, 2011, because of a right arm fracture.   Doc. # 27-1, p. 72.   On June 7, 2011, he inquired about having his arm cast removed although he had not been wearing it for more than three and one-half weeks.   *Id*. at 30.   Although Buentello's right hand was swollen and his cast was smelly, presumably due to hygiene problems, his gait was steady and he was capable of performing physical tasks such as climbing

onto the examination table without any difficulty. *Id.* at 29. Dr. Williams subsequently removed the restrictions noting that Buentello's knee and back problems are the result of mild arthritis which is commonly found in a person of Buentello's age, 44 years. Doc. # 27-2, at 4.

Buentello has not shown that he suffered any serious injury as a result of the lifting of his restrictions. Generally, the absence of physical harm bars recovery in a prison conditions case. *See Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003). Buentello fails to establish a violation of his constitutional rights because there is no indication that he suffered any physical injury as a result of the change in his work restrictions. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989). His disagreement with Dr. Williams's decision does not support a finding that his rights were violated. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992). Therefore, Dr. Williams is entitled to summary judgment with regard to her individual liability because there are no genuine issues of material fact regarding Buentello's claims of deliberate indifference to his medical needs.

Dr. Williams is also entitled to summary judgment regarding claims brought against her in her official capacity. To assert a claim against a government employee in her official capacity, the plaintiff must show that a government policy was behind

-14-

the alleged deprivation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In addition to failing to show that Williams was deliberately indifferent to his health, Buentello has failed to produce any evidence or articulate any facts that show that he was denied medical care pursuant to an official policy. Consequently, any claims brought against Dr. Williams shall also be dismissed. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009).

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Buentello has failed to show that there is a genuine issue of material fact on any claim he has against Dr. Williams. The Court therefore grants judgment in favor of Defendant Betty Williams.  It is therefore

**ORDERED** that Defendant Williams's motion to seal summary judgment motion and exhibits [Doc. # 26] is **GRANTED**.  It is further

**ORDERED** that Defendant Williams's motion for summary judgment [Doc. # 27] is **GRANTED**.  It is further

**ORDERED** that this prisoner civil rights suit is **DISMISSED with prejudice**.

The Court will issue a separate final judgment.

The Clerk is directed to provide a copy of this Memorandum and Order to the

-15-

parties.

SIGNED in Houston, Texas, on <u>January 24</u>, 2014.

Nancy F. Atlas
United States District Judge